**In re Edward C. PARK, III., et al., Debtors.**

**StellarOne Bank, Movant.**

**v.**

**Lakewatch LLC, Respondent.**

**No. 09–72046.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Aug. 31, 2010.

deposition. The transcript of the deposition was introduced at trial. The court need not reach the solvency issue.

A. Carter Magee, Jr., Andrew S. Goldstein, Garren Robert Laymon, Magee Foster Goldstein & Sayers PC, Roanoke, VA, for Debtors.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

A hearing was held on August 10, 2010, to consider StellarOne Bank's (hereafter "StellarOne") Motion to Dismiss or Convert Case [1] (hereafter the "Motion to Dismiss") and Lakewatch LLC's objection to the Motion to Dismiss [2]. Additionally, the Court considered StellarOne's Motion for Relief from the Automatic Stay [3] (hereafter the "Motion for Relief") and Lakewatch LLC's objection to the Motion for Relief [4]. After considering the evidence and the arguments of the parties the Court makes the following findings of fact and conclusions of law.

*Findings of Fact*

### A. Case Administration and Security Agreements

On August 11, 2009, Edward C. Park III filed his Chapter 11 petition. On September 22, 2009, Lakewatch LLC (hereafter "Lakewatch") filed its Chapter 11 petition.

---

1. Docket No. 294, Motion to Dismiss or Convert Case, *In re Lakewatch LLC*, Case No. 09–72046 (Bankr.W.D.Va. Jul.19, 2010).

2. Docket No. 304, Objection to Motion to Dismiss or Convert Case, *In re Lakewatch LLC*, Case No. 09–72046 (Bankr.W.D.Va. Aug.6, 2010).

3. Docket No. 165, Motion for Relief From the Automatic Stay, *In re Lakewatch LLC*, Case No. 09–72046 (Bankr.W.D.Va. Feb.5, 2010).

4. Docket No. 184, Answer to Motion for Relief From the Automatic Say, *In re Lakewatch LLC*, Case No. 09–72046 (Bankr.W.D.Va. Feb.19, 2010).

Mr. Park is the principal of Lakewatch. On October 30, 2009, an Order was entered directing that the cases of Mr. Park and Lakewatch be jointly administered for noticing purposes only. Thus, although jointly administered, the cases of Mr. Park and Lakewatch remain substantively distinct and separate. The Motion to Dismiss and Motion for Relief address Lakewatch and not the bankruptcy case of Mr. Park.

As of the petition date, Lakewatch owned various residential and commercial lots, as well as undeveloped acreage, in developments at Smith Mountain Lake known as LakeWatch Plantation (hereafter the "Lakewatch Properties"), and Waterside (hereafter the "Waterside Properties") (collectively, the Lake Watch Properties and the Waterside Properties are hereafter the "Properties").

Lakewatch executed various promissory notes with StellarOne which were secured by the Properties. As of August 10, 2010, the indebtedness owed by Lakewatch to StellarOne was $13,477,530.63, inclusive of interest, late fees, release fees and attorney's fees.

On February 5, 2010, StellarOne filed a Motion for Relief from the Automatic Stay (hereafter the "Motion for Relief"). On March 23, 2010, an Order was entered that temporarily resolved the Motion for Relief (hereafter the "March 23 Order"). In the March 23 Order the Court found that the value of the Properties was $15,790,000.00 as of March 9, 2010 and that StellarOne's interest in the Properties was not adequately protected by a significant equity cushion. The Court continued the Motion for Relief until August 10, 2010, and provided that the automatic stay would continue to that date provided that Lakewatch met the following conditions: (1) make monthly adequate protection payments to StellarOne, in the amount of $25,000.00, for the months of March, April, May, June

and July 2010; (2) by not later than July 31, 2010, Lakewatch shall have closed sales, or entered into written contracts of sale with all contingencies removed, for lots in the Properties that total at least $1,500,000.00; and (3) Lakewatch shall maintain appropriate insurance on the Properties that names StellarOne as a loss payee. If Lakewatch defaulted on any of these conditions and could not cure the default within ten days of notice of the default StellarOne would automatically be granted relief from the automatic stay. By July 31, 2010, Lakewatch sold lots located in the Properties with an aggregate value of $1,522,500.00 and fully complied with the remaining conditions set forth in the March 23 Order. Therefore, the automatic stay remained in effect until August 10, 2010.

As of August 10, 2010, the delinquent real estate taxes that are due and owing on the Properties is $302,580.41. When the amount of delinquent taxes is deducted from the value of the Properties, the net worth of the Properties is $15,487,419.59. When the $1,522,500.00 in sales made by Lakewatch prior to the July 31, 2010 deadline is deducted from the net worth of the Properties, the worth of the remaining Properties is $13,964,919.59.

### Discussion

### Motion to Dismiss

#### I.   11 U.S.C. § 1112(b)

11 U.S.C. § 1112(b)(1) provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1) (West, 2010). 11 U.S.C. § 1112(b)(4) provides a non-exhaustive list of events which may establish cause for dismissal under § 1112(b)(1). Included in this list is § 1112(b)(4)(A)

which is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and § 1112(b)(4)(I) which is a "failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." 11 U.S.C. § 1112(b)(4)(A) and (I) (West, 2010).

However, there are two instances in which a court may not dismiss or convert a case. The first instance is found in § 1112(b)(1) and occurs if the debtor can demonstrate unusual circumstances that would establish that a dismissal or conversion is not in the best interest of the creditors or the estate. The second is found in § 1112(b)(2) which provides that a request for dismissal or conversion under § 1112(b)(1) may not be granted, even though unusual circumstances have not been established by the debtor, if the debtor or another party in interest objects to dismissal or conversion and establishes that

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; *and*

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; *and*

(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2) (West, 2010) (emphasis added). *See In re Orbit Petroleum Inc.,* 395 B.R. 145, 147 (Bankr.D.N.M. 2008). *See also, Colliers on Bankruptcy* ¶ 1112.02[2] (Alan Resnick & Henry Somers, 16th ed. 2009).

### a.   Burden of Proof and Standard of Proof

The moving party bears the initial burden of establishing a *prima facie* case that cause exists to dismiss or convert. *In re Sydnor,* 431 B.R. 584, 591 (Bankr.D.Md.2010). Once a *prima facie* case establishing cause is made, then the burden shifts to the objecting party to either: (a) demonstrate that unusual circumstances exist that would that make dismissal or conversion unfavorable to the creditors or estate; or (b) establish that a plan will be confirmed and that the act or omission that forms the basis for the aforementioned cause to dismiss or convert will be cured within a reasonable period of time. *Colliers on Bankruptcy* ¶ 1112.01[1] (Alan Resnick & Henry Somers, 16th ed. 2009).

The standard of proof is a preponderance of the evidence standard. *In re Woodbrook Assocs.,* 19 F.3d 312, 317 (7th Cir.1994). *See also, In re Citi–Toledo Partners,* 170 B.R. 602, 606 (N.D.Oh.1994) (citing *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

In this case, StellarOne must prove, by a preponderance of the evidence, that cause exists to dismiss or convert Lakewatch's case. If StellarOne can demonstrate that such cause exists then the burden of proof shifts to Lakewatch to either prove that unusual circumstances exist such that dismissal or conversion of its case would not be in the best interests of the creditors or the estate, or that it has satisfied the requirements set forth in § 1112(b)(2). For the following reasons the Court finds that StellarOne has established that cause exists to dismiss or convert Lakewatch's case and that Lakewatch has failed to either prove unusual circumstances or satisfy the requirements of § 1112(b)(2).

## II.  Cause to Dismiss or Convert Under § 1112(b)(4)(A)

StellarOne asserts that cause exists under § 1112(b)(4)(A) to dismiss Lakewatch's case pursuant to § 1112(b)(1). § 1112(b)(4)(A) states "[f]or purposes of this subsection, the term 'cause' includes— (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." § 1112(b)(4)(A) has two components, both of which must be satisfied for cause to exist under this code provision.  The first is that there must be a "substantial or continuing loss to or diminution of the estate."  The second is that there must be an "absence of a reasonable likelihood of rehabilitation."  *In re Quail Farm, LLC,* 2010 WL 1849867 (Bankr.N.D.W.V. May 5, 2010).

### a.  Substantial or Continuing Loss or Diminution of the Estate

*Quail Farm* holds that "to show that the Debtor has incurred substantial or continuing loss or diminution to the estate the '[m]ovant must show that the Debtor continues to incur losses or maintains a negative cash flow position after the filing of the bankruptcy petition.'"  *Quail Farm,* 2010 WL 1849867, at *3 (quoting *In re Roan Valley, LLC,* Case No. 09–13229, 2009 WL 6498188, *2–3, 2009 Bankr.LEXIS 4246, at *6 (Bankr.N.D.Ga. Nov. 25, 2009)).  *Quail Farm* goes on to state that "[t]he absence of a reliable source of income together with the inability to pay current expenses is sufficient to show continuing loss."  *Id.*

In this case, StellarOne has introduced into evidence Lakewatch's operating reports for period of January 2010 through June 2010 (collectively hereafter the "Operating Reports").  The January 2010 operating report shows monthly income of $0.00, monthly expenses of $10,065.32, and monthly cash profits of -$10,065.32.  The February 2010 operating report shows monthly income of $1,424.84, monthly expenses of $4,857.44, and monthly cash profits of -$3,432.60.  The March 2010 operating reports show monthly income of $8,000.00, monthly expenses of $3,459.41, and monthly cash profits of $4,540.59.  The April 2010 operating reports show monthly income of $1,753.97, monthly expenses of $4,566.43, and monthly cash profits of -$2,812.46.  The May 2010 operating report shows monthly income of $0.00, monthly expenses of $6,301.59, and monthly cash profits of -$6,301.59.  Lastly, the June 2010 operating report shows monthly income of $4,800.00, monthly expenses of $30,952.88, and monthly cash profits of -$26,152.88.

The aggregate picture painted by the Operating Reports is bleak.  With the exception of March 2010, Lakewatch was unable to fully pay its expenses between January 2010 and June 2010.  Furthermore, there is no evidence that Lakewatch has a reliable source of income.  The Operating Reports show widely varying degrees of income.  Indeed in two of the six months there was no income at all whereas in other months there was up to $8,000.00 in income.  The source of income reported is not disclosed.

Moreover, StellarOne has introduced into evidence two documents, one titled Equity Cushion at Fair Market Analysis 8/10/2010 (hereafter the "8/10 Equity Analysis") and the other titled Equity Cushion at Fair Market Analysis 3/9/2010 (hereafter the "3/9 Equity Analysis").  The 3/9 Equity Analysis sets forth the following figures:  the value of the Properties is $15,790,000.00, as stated in the March 23 Order;  there is $248,809.49 in assessed and delinquent properties taxes attached to the Properties; and the amount of indebtedness owed to StellarOne is

$14,627,385.58. The net result of these figures is that as of March 9, 2010, there was $913,804.93 in equity, which represents 5.8% of the value of the Properties.

The 8/10 Equity Analysis sets forth the following figures: the value of the Properties is $14,267,500.00 [5]; there is $302,580.41 in assessed and delinquent properties taxes attached to the Properties; and the amount of indebtedness owed to StellarOne is $13,477,530.63. The net result of these figures is that as of August 10, 2010, there was $487,388.96 in equity, which represents 3.5% [6] of the value of the Properties.

The difference in equity between the 3/9 Equity Analysis and the 8/10 Equity Analysis is a $426,415.97 loss over a period of five months.

The $426,415.97 loss in equity demonstrates a substantial and continuing loss to the creditors and a diminution of the estate. Based on the facts that Lakewatch has been unable to pay monthly expenses in five out of six months, has not demonstrated a consistent source of income, and that the equity cushion has been eroded by $426,415.97 in five months the Court finds that StellarOne has demonstrated that there is a substantial and continuing loss to the creditors and a diminution of the estate.

### b. Absence of Reasonable Likelihood of Rehabilitation

■ *Quail Farm* holds that "[t]he second prong of § 1112(b)(4)(A), requires the movant to show that the debtor has no reasonable likelihood of rehabilitation." *Quail Farm*, 2010 WL 1849867, at *4. *Quail Farm* goes on to state that "rehabilitation requires, 'at minimum, the prospect of re-establishing a business.'" *Id.* (quoting *Canpartners Realty Holding Co. IV, L.L.C. v. Vallambrosa Holdings L.L.C. (In re Vallambrosa Holdings, L.L.C.)*, 419 B.R. 81, 89 (Bankr.S.D.Ga.2009)).[7]

■ In this case, Lakewatch's ability to rehabilitate itself and re-establish its business depends entirely on selling the real properties that it owns. There are no other revenue producing entities controlled by Lakewatch and Lakewatch has not identified any other way for it to become a viable going concern. To effectu-

---

**5.** This figure represents the $1,522,500.00 in properties located in the Properties sold by Lakewatch deducted from the $15,790,000.00 which the Court set as the value of the Properties in the March 23 Order.

**6.** This figure was the matter of some contention during the trial since the actual document introduced at trial showed equity as a percentage of total value to be 3.6%. StellarOne's witness, who created the documents, admitted that this was in error and stated that the correct figure would be 3.5% if the right figures had been used. Transcript of Record, pg. 25, *In re Lakewatch, LLC*, No. 09–72046 (Bankr.W.D.Va. Aug.10, 2010).

**7.** The Court notes that StellarOne argues that *Quail Farm* cites to *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515 (8th Cir.2004) for the position that rehabilitation cannot include liquidation. However, in the sentence immediate-

ly preceding the citation to *Loop*, *Quail Farm* cites to numerous other cases for the position that in determining whether a debtor can rehabilitate the question is whether they can establish a viable business. In this case, Lakewatch's sole business is the liquidation of real estate. While the sale of real property is properly termed liquidation, the Court finds that this is not the sort of liquidation contemplated in *Loop* and that reading *Loop* to bar all forms of liquidation would result in an absurd position wherein a business whose only business purpose is the liquidation of real property is barred from reestablishing itself. This reading would frustrate the purposes of Chapter 11 reorganization and therefore, the Court finds that Lakewatch's reliance on liquidation as its sole mechanism for rehabilitation does not act as a bar for purposes of determining likelihood of rehabilitation under § 1112(b)(4)(A).

ate its rehabilitation Lakewatch has stated that it intends to sell approximately $3 million worth of property each year over a five to six year period. Lakewatch contends that if it can meet this sales projection it will be able to fully repay StellarOne, pay all delinquent taxes and satisfy all other creditors. However, StellarOne has provided testimony that Lakewatch, during the period of time it has been borrowing money from StellarOne, has never made payments to StellarOne in the amount contemplated by sales revenue projected by Lakewatch. Indeed, StellarOne's witness testified that Lakewatch has never made annual payments towards its debt with StellarOne that would exceed approximately $1.2 million. Transcript of Record, pg. 16, *In re Lakewatch LLC*, No. 09–72046 (Bankr.W.D.Va. Aug. 10, 2010). StellarOne's testimony calls into question Lakewatch's ability to meet its projected figure of $3 million in annual sales.

Further calling Lakewatch's ability to rehabilitate itself into question is the fact that Lakewatch has sold one residential lot in the Properties in the past five months, a period of time considered to be the peak selling season for the geographic area in which the Properties are located. Transcript at 43. The bulk of the real property which comprises the estate consists of residential lots. The failure of Lakewatch to sell more than one residential lot from March through July 2010, creates serious doubt as to Lakewatch's ability to meet the $3 million projected sales revenue which it proposes in order to rehabilitate its business.

If Lakewatch is unable to meet the $3 million annual figure then the ability to reestablish itself as a business is in serious jeopardy as the interest accruing on the indebtedness to StellarOne will continue to grow, as will the interest and penalties on delinquent taxes, to say nothing of the taxes assessed over the course of the five to six years that Lakewatch projects its recovery will need.

The Court finds that StellarOne's evidence that Lakewatch cannot meet the $3 million figure in projected annual revenue as well as the failure of Lakewatch to sell residential lots in the Properties establishes, by a preponderance of the evidence, that Lakewatch will be unable to satisfy its debts and thus, will be unable to rehabilitate itself. Therefore, the Court finds that StellarOne has established that there is no reasonable likelihood of rehabilitation for purposes of § 1112(b)(4)(A). Since StellarOne has demonstrated both that there is a continuing loss or diminution of the estate and that there is no reasonable likelihood of rehabilitation the Court finds that StellarOne has met the requirements of § 1112(b)(4)(A) and has established cause to dismiss or convert Lakewatch's case under § 1112(b)(1).

### c. *Unusual Circumstances Not Established*

■ Having found that StellarOne has established cause to dismiss or convert Lakewatch's case, the Court now finds that the burden of proof now rests upon Lakewatch to show the existence of unusual circumstances that would demonstrate that dismissal or conversion is not in the best interests of creditors or the estate.[8] However, *Sydnor* holds that "[s]uch unusual circumstances cannot solely be facts that are common to Chapter 11 cases generally." *Sydnor*, 431 B.R. 584, 590 (citing

---

**8.** Since cause to dismiss or convert has been shown to exist under § 1112(b)(4)(A), the defense to dismissal or conversion afforded to Lakewatch under § 1112(b)(2) is not available. *In re Quail Farm, LLC*, 2010 WL 1849867, at *2 (Bankr.N.D.W.V. May 5, 2010).

*Colliers on Bankruptcy* ¶ 1112.05 (Henry Somers & Alan Resnick, 16th ed. 2009)).

Lakewatch did not admit any evidence into the record, make any arguments during its response to the case-in-chief, or call any witnesses in support of its position. Transcript at 57. Lakewatch failed to identify or establish any unusual circumstances, outside those circumstances customarily associated with a Chapter 11 case, which would show that dismissal or conversion is not in the best interest of creditors or the estate. Therefore the Court finds that the Debtor failed to produce evidence sufficient to shift the burden of proof back to StellarOne.

### III. Cause to Dismiss or Convert Under § 1112(b)(4)(I)

■ § 1112(b)(4)(I) states "[f]or purposes of this subsection, the term 'cause' includes—failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." This provision is clear in its requirement to find cause to dismiss or convert if a debtor fails to pay post-petition taxes of any kind.

In this case Mr. Park, Lakewatch's principal, testified, as an adverse witness, that pre-petition taxes were $66,848.08 as of September 9, 2009, the date on which Lakewatch filed its schedules.[9] Balance of Schedules, *In re Lakewatch,* No. 09–72046 (Bankr.W.D.Va. Sep. 9, 2009). The 8/10 Equity Analysis produced by StellarOne shows that taxes due and owing on the Properties was $302,580.41. The difference between the taxes due and owing on August 10, 2010, and those taxes due and owing on the date on which Lakewatch's schedules were prepared is $235,732.33.

Mr. Park testified that those taxes have not been paid. Accordingly, the Court finds that StellarOne has demonstrated, by a preponderance of the evidence, that Lakewatch has failed to pay post-petition taxes. Thus, the Court finds that StellarOne has established a *prima facie* case of cause to dismiss or convert Lakewatch's case pursuant to § 1112(b)(1).

### a. Defenses to Dismissal Or Conversion Under 11 U.S.C. § 1112(b)(4)(I)

Since StellarOne has made a *prima facie* case of cause to dismiss or convert Lakewatch's case, the burden of proof now shifts to Lakewatch to either demonstrate unusual circumstances that would make dismissal or conversion not in the best interest of creditors or the estate, or to satisfy the requirements of § 1112(b)(2).

### i. Unusual Circumstances

■ With regard to unusual circumstances, Lakewatch did not produce any evidence of unusual circumstances with the exception of reference to the March 23 Order in which the Court directed Lakewatch to sell $1.5 million worth of property located in the Properties by July 31, 2010, to pay all proceeds from said sales to StellarOne in satisfaction of its debt, and to pay $25,000.00 per month in adequate protection payments through July 31, 2010. Lakewatch appears to argue that the requirement in the March 23 Order mandating that Lakewatch pay all proceeds from the sales of its real estate to StellarOne and make adequate protection payments provided tacit approval for Lakewatch to not pay its taxes. However, the Court finds nothing in the language of the March 23 Order that conveys such a message

---

**9.** The schedules reflect the financial position of the debtor, i.e. Lakewatch, at the time of the filing of the petition. Additionally, this figure represents the amount of tax indebtedness owed by Lakewatch to Franklin County, Virginia. The figures produced at trial represent the amount of tax indebtedness owed by Lakewatch to Franklin and Bedford Counties, Virginia.

either directly or indirectly. While Lakewatch may have be planning on paying its taxes from the sales of real estate and could not execute that plan because all of the proceeds of from the sale of real estate were directed to be sent to StellarOne, the Court finds that this did not preclude Lakewatch from finding other sources of income to do so. Furthermore, the Court finds that the inability to pay taxes is a problem commonly associated with Chapter 11 filings in general, and under *Sydnor*, Lakewatch's inability to come up with the funds required to pay its taxes is not properly considered as unusual circumstances for purposes of § 1112(b)(4)(I). For the aforementioned reasons the Court finds that Lakewatch has not met its burden in demonstrating unusual circumstances that would persuade the Court that dismissal or conversion is not in the best interests of creditors or the estate.

### ii. Defense under 11 U.S.C. § 1112(b)(2)

Although the Court has found that there are no unusual circumstances that would persuade the Court that dismissal or conversion of Lakewatch's case is not in the best interests of the creditors or the estate, Lakewatch can still avail itself of the defense to dismissal or conversion provided for in § 1112(b)(2). In order to successfully avail itself of § 1112(b)(2), Lakewatch must prove (1) "there is a rea-

sonable likelihood that a plan will be confirmed within the time-frames establishes in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time" and (2) that the ground for granting the requested dismissal or conversion is not that there is a continuing loss or diminution of the estate and no likelihood of rehabilitation. The second prong contains two further requirements, first, that there is a reasonable justification for the act or omission that creates the ground for dismissal or conversion, and second, that the act or omission will be cured within a reasonable period of time fixed by the Court. Since the two main prongs and the two subprongs of prong number two are written in the conjunctive all requirements must be met.

### iii. Conclusions on Defenses to Dismissal or Conversion

In this case, Lakewatch has not presented any evidence that there was reason to believe that its plan of reorganization would be "confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title." 11 U.S.C. § 1112(b)(2) (West, 2010). Since Lakewatch has failed to satisfy the first prong of the analysis under § 1112(b)(2) the Court finds that Lakewatch has not met its burden with respect to § 1112(b)(2).[10]

---

**10.** Even if the first prong is satisfied Lakewatch has not presented evidence which would demonstrate that the failure to pay the post-petition taxes was justified or that they could repay the taxes in any amount of time set by the Court. On this latter point, the Court notes that StellarOne's evidence was that it has never received more than $1.2 million in repayment of its loans from Lakewatch. In order to repay StellarOne in full, Lakewatch would need to make approximately $3 million in annual repayments over five to six years. The Court finds the $1.2 million figure to be the most accurate representation of the Lakewatch's ability to sell real estate

and repay StellarOne's loan given the current real estate market in the geographic area where the Properties are located. At the $1.2 million per year rate Lakewatch will be unable to repay StellarOne while at the same time making payments towards its delinquent taxes as well as keeping up with current taxes as they become due. Therefore, the Court finds that Lakewatch would never be able to repay its secured creditor and pay its taxes and thus, could never cure the failure to pay post-petition taxes. Since Lakewatch could never cure its post-petition taxes it cannot cure the ground upon which dismissal or conversion is sought, i.e. § 1112(b)(4)(I). Ac-

Since Lakewatch has failed to demonstrate unusual circumstances with regard to nonpayment of post-petition taxes that would persuade the Court that dismissal or conversion was not in the best interest of creditors or the estate, and has failed to meet the requirements of § 1112(b)(2), the Court finds that Lakewatch has not rebutted the *prima facie* case that cause exists to dismiss or convert its case established by StellarOne.

### IV.  Relief Requested: Dismissal or Conversion

■■■ § 1112(b)(1) states that the Court "shall convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." (11 U.S.C. § 1112(b)(1) (West, 2010)). The Court has already found that cause has been established under 11 U.S.C. §§ 1112(b)(4)(A) and (I). Thus, the remaining inquiry is whether Lakewatch's case should be dismissed or converted.

In considering whether to dismiss or convert Lakewatch's case the Court notes the finding in *In re Avis*, 2008 WL 5786807 (Bankr.E.D.Va.2008) that,

> The two most compelling factors in most cases will be (1) the willingness of the creditor body to work with the debtor and to give him additional time and (2) the degree of financial hemorrhaging. If a debtor is at least treading water on a cash flow basis, heavy weight should no doubt be given to creditor sentiment in favor of letting the case continue in chapter 11. But where a debtor is losing money at a significant rate, creditor sentiment, while entitled to respectful

consideration, will weigh considerably less in the balance.

*In re Avis*, 2008 WL 5786807, at *3. In this case, no creditor has come forward with a preference for either dismissal or conversion with the exception of StellarOne, which seeks dismissal. StellarOne is the main creditor in Lakewatch's case as it holds a secured lien on all of the Properties. StellarOne's request for dismissal is evidence that the creditor body is not willing to work with Lakewatch. Also, StellarOne's bank officer testified at trial that StellarOne would not vote in favor of the plan proposed by Lakewatch.

With regard to the degree of financial hemorrhaging, the Court finds that Lakewatch has been unable to maintain a stable source of income and, as evidenced by the Operating Reports, has lost money in five of first six months of 2010. Furthermore, the 8/10 Equity Analysis and the 3/9 Equity Analysis show a $426,415.97 diminution in the equity of the Properties over a five month period. Lastly, this decrease in equity will only continue since the Lakewatch has not paid delinquent taxes and therefore faces ever increasing interest and penalties.

The Court finds that the lack of willingness of creditors to work with Lakewatch within Chapter 11 and the fact that Lakewatch has no capital to support its ongoing operation leads to the conclusion that dismissal is the most appropriate relief and is in the best interest of the creditors and the estate.

The Court also notes that another reason for the dismissal of Lakewatch's case is that the Court, for the reasons stated below, grants StellarOne's Motion for Relief. Since the Properties which are sub-

---

cordingly, the Court finds that the second subprong to the second prong cannot be met and therefore, the second main prong cannot be satisfied. Since the second main prong can-

not be satisfied Lakewatch has failed to meet all of the requirements of § 1112(b)(2) and cannot avail itself of the protection provided by the provision.

ject to the lien of StellarOne form Lakewatch's asset base, the Court finds that there will be nothing of substance left in Lakewatch for a Chapter 7 Trustee to administer and thus, dismissal is the most appropriate relief.

### V. Granting the Motion for Relief

11 U.S.C. § 362(d)(1) permits a court, on request of a party in interest and after a hearing, to grant relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest." In this case, the Court determined that StellarOne was not adequately protected in the March 23 Order. As a result of that finding, the Court ordered Lakewatch to pay $25,000.00 in monthly adequate protection payments to StellarOne. Those adequate protection payments ceased on July 31, 2010.

Since the March 23 Order was entered, the 8/10 Equity Analysis shows that equity in the property has decreased by a significant amount. This decrease in equity only furthers the Court's previous finding that StellarOne is not adequately protected. Post July 31, 2010 Lakewatch has not proposed any adequate protection payments to StellarOne and therefore, the Court finds that cause exists to grant the Motion for Relief under 11 U.S.C. § 362(d)(1).

### VI. Conclusion

The Court finds that cause exists under 11 U.S.C. § 1112(b)(4)(A) and (I) to grant the Motion to Dismiss pursuant to § 1112(b)(1). The Court further finds that dismissal, rather than conversion of Lakewatch's case, is the more appropriate relief. In finding that dismissal is the most appropriate relief, the Court finds that Lakewatch lacks creditor support, has little to no sustainable income, cannot pay its expenses and that the granting of the Motion for Relief leaves little in the way of assets for a Chapter 7 Trustee to administer. Accordingly, it is

### ORDERED

That StellarOne's Motion for Relief from the Automatic Stay is hereby **GRANTED.** It is,

### FURTHER ORDERED

That StellarOne's Motion to Dismiss or Convert Case is hereby **GRANTED** and the Chapter 11 proceeding of Lakewatch LLC is hereby **DISMISSED.**

Copies of this Order are directed to be sent to: counsel for Lakewatch LLC, Andrew S. Goldstein, Esquire; counsel for StellarOne Bank, Paul M. Black, Esquire; and to the U.S. Trustee, Joseph A. Guzinski, Esquire.